**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, James A Martin, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      This application is to support my request for a search warrant for information associated with a certain Snapchat user ID that is stored at premises owned, maintained, controlled, or operated by Snapchat, a social networking company headquartered in Menlo Park, California. The information is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b) (1) (A) and 2703(c) (1) (A) to require Snapchat to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID for violations of Title 18 U.S.C. §§ 371 and 922(u).

2.      I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives (hereinafter, "ATF"). I am currently assigned to the Manchester, New Hampshire Field Office in the Boston Field Division since November 2017. Prior to becoming an ATF Special Agent, I was employed as a United State Federal Air Marshal (11 years) and a New Hampshire State Trooper (11 years). While training to become a Special Agent, I attended the Federal Law Enforcement Training Center in Glynco, GA full-time for six-and-a-half months. During my time at FLETC, I received training in practices and methods of illegal firearm possessors, firearm traffickers, and related federal criminal statutes. Over the course of my law enforcement career, I have conducted and/or participated in a number of investigations involving state and federal firearm and controlled substance violations. I have interviewed multiple victims, sources of information, witnesses, suspects, and

defendants regarding various types of criminal activity. I have also served search warrants for various crimes and have made criminal arrests for firearm and controlled substance violations. I participated in state and federal investigations involving possession of illegal weapons including firearms, improvised explosive devices and possession of controlled substances. I also conducted numerous investigative stops and probable cause searches of people and vehicles. I participated in physical surveillance operations and participated in the execution of state and federal arrest warrants.

3.       This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.       The ATF Manchester Field Office is working in conjunction with numerous law enforcement agencies in New Hampshire and Massachusetts in investigating a series of Federal Firearms Licensee (FFL) burglaries and attempted burglaries.  The investigation concerns possible violations of 18 USC §§371 and 922(u).

5.       I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

6.       The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## BACKGROUND INFORMAITON REGARDING SNAPCHAT

7.       Snap Inc. is headquartered in Santa Monica, California, and owns and operates a free access social networking website Snapchat that can be accessed at

http://www.snapchat.com.  Snapchat is one of the most popular applications for sending and

receiving 'self-destructing' messages, pictures, and videos. Referred to as 'snaps', the company

processes approximately 700 million of them every day on Apple's iOS and Google's Android

operating systems. Snapchat users access the application frequently. According to marketing

material provided by the company, the average Snapchat user checks their account 14 times a

day.

       8.     A "snap" is a picture or video message taken and shared with other Snapchat

users in real-time.  The sender of a snap has the option of setting a timer for how long a snap can

be viewed.  Once a snap has been viewed, it is deleted from the company's system and is no

longer visible to the recipient.  Snapchat users can send text messages to others using the Chat

feature.  Once a user leaves the Chat screen, messages viewed by both the sender and the

receiver will no longer be visible.  The application notifies other users when they are online so

they can begin messaging each other.  In addition, Snapchat users can send pictures to other

users by utilizing the camera on their device.  Pictures can also be sent from the saved pictures in

the photo gallery of the device.  Accessing a Snapchat account and "snaps" constitutes

"electronic communications" within the meaning of 18 U.S.C. § 3123.  See 18 U.S.C. §§ 3127(1)

and 2510(12).

       9.     "Our Stories" is a collection of user submitted "Snaps" from different locations

and events. A Snapchat user, with the location services of their device turned on, can contribute

to a collection of snaps regarding the event. For example, multiple different Snapchat users at a

rave could all contribute to the same "Our Stories" collection by sharing their snaps, even if they

do not know each other. Users can also view "Our Stories" events if they are not actually present

at the event by subscribing to the story.  In addition to "Our Stories", a Snapchat user can keep a

sort of photo/video diary using the "Story" feature.  Each snap in a "Story" documents the user's experience.   Based on the user's privacy settings, the photos and videos added to a "Story" can be viewed either by everyone on Snapchat or just the user's friends.  Stories are visible to other users for up to 24 hours.

10.       In addition to photos, videos, "Snaps" and stories, "Snapcash" is an online money transfer service offered by Snapchat.   The actual business platform is run by "SquareUp", the distributor of a mobile credit card reader and application Square Register.  Snapcash can be used to transfer money between Snapchat users using a linked, U.S. issued Visa or MasterCard debit card only; using credit cards is not permitted. Snapcash can only be sent to other users who have a linked debit card.  Snapcash has a $250 weekly limit but can be upgraded to a $2,500 weekly limit.   Users who upgrade have to provide their full name, date of birth, and Social Security number.

11.       While a Snapchat message may disappear, the record of who sent it and when it was sent still exists. Snapchat records and retains information that is roughly analogous to the call detail records maintained by telecommunications companies. This includes the date, time, sender, and recipient of a snap. Additionally, Snapchat stores the number of messages exchanged, which users they communicate with the most, message status including if and when the message was opened, and whether the receiver used the native screen capture function of their device to take a picture of the snap before it disappeared.

12.       Snapchat asks users to provide basic contact and personal identifying information to include date of birth.  When a user creates an account they make a unique Snapchat username. This is the name visible to other Snapchat users. An email address is required to register a Snapchat account and a new user must also provide a mobile phone number. This phone number

is verified during the registration process. Snapchat sends an activation code, which must be entered before proceeding with the registration step.  However, a user may elect to bypass entering a phone number so one may not always be present in the user's account. Snapchat also retains the account creation date.

13.     Snapchat stores device information such as the model, operating system, operating system version, mobile device phone number, and mobile network information of devices used in conjunction with the service. They also collect unique device identifiers such as the Media Access Control (MAC) address and the International Mobile Equipment Identifier (IMEI) or Mobile Equipment Identifier (MEID) of devices used to access Snapchat. In the event the Snapchat user's application crashes, the company also collects a list of other installed applications on the device to detect any potential software conflicts.

## PROBABLE CAUSE

14.     ATF has been investigating four separate burglaries and four attempted burglaries of FFLs in New Hampshire occurring between August 31, 2021, and January 9, 2022, including a burglary/ theft committed by multiple individuals on December 8, 2021, from Second Amendment Outdoors, a FFL (FFL # 6-02-015-07-3K-03269), located at 158 Rockingham Road, Suite #4, Derry, New Hampshire 03038, in violation of Title 18, United States Code, Sections 371 and 922(u).

15.     In the early morning of December 8, 2021, Second Amendment Outdoors was broken into. Second Amendment Outdoors is located in a strip plaza and is one business of a number of businesses in a one-story building.

16.     Law Enforcement processed the burglary scene and conducted an initial review of security video from Second Amendment Outdoors. Those videos showed that, at approximately

5:05 AM, a blue Chevrolet Cruz (the "Chevrolet Cruz") entered the plaza from Rockingham

Road southbound (also named Route NH-28) and backed into the spot in front of Second

Amendment Outdoors. Three masked, gloved subjects wearing hooded sweatshirts over their

heads, who I believe to be males based on their body shapes, size, and gait, exited the Chevrolet

Cruz. Based on review of the security footage, the three suspected males appear as follows:



*Figure 1: Three Suspects Exiting Chevrolet Cruz*

   a.  Suspect #1 exited the rear passenger side door of the Chevrolet Cruz and

       appeared to be an average build, possibly Hispanic male, wearing light

       gray outer hoodie (and possibly an Adidas hoodie underneath outer

       hoodie), light gray sweatpants and white tennis sneakers. Suspect #1 wore

       a mask and dark-colored gloves, appeared to have a phone in his right

       pants pocket and appeared to hold a light-colored bag as he approached

       the FFL front door. Suspect #1 removed a pair of what appeared to be

       pliers from his left pants pocket and later used the item to smash the glass

       firearm display case inside of the FFL.

6



*Figure 2: Suspect #1*

b.  Suspect #2 exited the front passenger side door of the Chevrolet Cruz and

appeared to be a shorter, possibly white male, wearing a darker-colored

hooded sweatshirt, gray sweatpants, and gray sneakers with white soles.

Suspect #2 wore a dark face mask, dark gloves, carried a large multi-

colored duffle bag with red strap and also used yellow pliers. Suspect #2

approached the FFL carrying a fire extinguisher.



*Figure 3: Suspect #2*

c.   Suspect #3 exited the rear driver's side door of the Chevrolet Cruz and
appeared to be a taller, possibly black, or Hispanic male, wearing a dark,
possibly black hooded sweatshirt with what appeared to be the
"Champion" logo on front left chest and left sleeve, dark-colored
sweatpants, black socks, and Nike sandals. Suspect #3 wore a blue
medical facemask, a white head cover, black gloves and carried a light-
colored duffle bag, similar to Suspect #1's.



*Figure 4: Suspect #3*

    d.   Suspect #4 was operating the Chevrolet Cruz, but never exited the

        vehicle. As the suspects approached the FFL, the trunk to the Chevrolet

        Cruz opened, which indicates to me that a driver remained inside of the

        Chevrolet Cruz.

17.    Suspect #2 broke the glass entrance door to Second Amendment Outdoors with a

fire extinguisher. Suspect #1 and Suspect #2 utilized pliers to remove the smashed glass from the

door frame and Suspect #1 entered the store. Suspect #1 utilized what appeared to be a pair of

pliers to break the glass on a display case containing pistols. Suspect #1 took pistols from the

broken display case and two long guns from the wall display. Suspect #1 passed the long guns

and pistols to Suspect #2 through the opening in the front door. Suspect #1 then went back to the

broken display case and took more pistols. Suspect #1 then threw the pistols through the opening

in the front door. Suspect #2 and Suspect #3 collected the thrown firearms from the sidewalk.

Suspect #1 climbed through the opening in the front door and the three suspects got back into the

Chevrolet Cruz in their respective doors.  The vehicle exited the plaza via Route NH-28

southbound. The entirety of the burglary lasted approximately one minute.

18.     At the time the burglary occurred, Second Amendment Outdoors was closed and

no store employees or their smartphones were present.

19.     Michael Bracci, owner of Second Amendment Outdoors, advised that the

following twelve firearms were stolen during the burglary:

| Manufacturer | Model | Caliber | Type | Serial Number |
|---|---|---|---|---|
| Ruger | 10/22 | 22 LR | Rifle | 0010-58641 |
| Ruger | LC9S | 9mm | Pistol | 321-41855 |
| Ruger | 10/22 CHARGER | 22 LR | Pistol | 492-14433 |
| Bersa | Thunder 380 | 380 | Pistol | 969083 |
| Kimber | Micro 380 | 380 | Pistol | P0041659 |
| Smith & Wesson | M&P 380 Shield | 380 | Pistol | NCV8929 |
| Taurus | G3C | 9mm | Pistol | ACG061880 |
| Taurus | G3C | 9mm | Pistol | ABH843415 |
| Star, Bonifacio Echeverria | Ultra Star | 9mm | Pistol | 2137062 |
| Springfield / HS Product (IM METAL) | XD-9 | 9mm | Pistol | BA226333 |
| SAR Arms | SAR9 | 9mm | Pistol | T1102- |

| (Sarsilmaz) | | | | 20BV06755 |
|---|---|---|---|---|
| Bersa | Thunder 380 | 380 | Pistol | 135725 |

Bracci said that each firearm was loaded with a magazine.

20.     On December 9, 2021, the Salem, New Hampshire Police Department recovered a 2016 blue Chevrolet Cruz, bearing NH registration 4726569, which was located at the Town of Salem, NH Water Treatment Facility at 161 N. Policy Street, Salem, NH. The vehicle was queried through NCIC and determined to be reported stolen from ███████████ Atkinson, New Hampshire on December 6, 2021.

21.     On the same day, ATF obtained consent from the registered owner of the Chevrolet Cruz to process and search its contents. The consent search yielded a pistol magazine, a rifle flash suppressor, broken glass, and two white retail firearms tags from the trunk of the vehicle. The tags belonged to the stolen Kimber Micro 380 Raptor Custom Shop pistol and Taurus PT111 G3C pistol. A piece of black latex glove was located in the rear passenger seat floorboard. A pair of wire cutters was also located on the backseat.

22.     ATF reviewed video from the Town of Salem NH Water Treatment Facility. Law enforcement identified another vehicle at the Water Treatment Plant parking area with the 2016 Chevy Cruz—a 2005 silver Toyota Highlander; at that time a registration could not be obtained. At the request of ATF, Lawrence Police Detective Alex Ovalles reviewed the City of Lawrence cameras (Flock) for the time period of December 6, 2021, to December 9, 2021, and observed a 2005 silver Toyota Highlander bearing Massachusetts registration 519EF2 following behind the 2016 blue Chevrolet Cruz, bearing NH registration 4726569. ATF Special Agents queried the

vehicle and learned it was registered to Gary A. Ortiz of ▮ 13th Avenue, Haverhill, Massachusetts.

23.     I learned from Lawrence Police Detective Ovalles and Haverhill Police School Resource Officer Ryan Connelly that Gary E. ORTIZ, who is the son of Gary A. Ortiz, and also resides at ▮ 13th Street, is a Gangster Disciple (GDs) associate and is known to carry a firearm on his person. I know that the GDs are a known street gang involved in a variety of crimes including illegal narcotics and illegal firearms sales. Detective Ovalles stated ORTIZ along with Derek MERCADO are suspects in at least one shooting in Lawrence, Massachusetts.

24.     Derek MERCADO, who resides at ▮ Union Street, Apartment 502, Union Street, Lawrence, Massachusetts, is known to LPD as a GD associate. LPD have interacted with MERCADO for a variety of crimes/arrests in the City of Lawrence including at least one (1) shooting incident during the past year.

25.     I learned through conversation with ATF Special Agent John Cook, that on December 10, 2021, S/A Cook observed the Highlander while conducting surveillance at the Princeton Village Condominiums, located on Henry Avenue in Lawrence, Massachusetts.  S/A Cook followed the Highlander and contacted the Lawrence Police Department ("LPD") to request backup in order to conduct a motor vehicle stop to seize the Highlander pending a federal search warrant.  I learned from S/A Cook that the operator of the Highlander, later identified as ORTIZ, began to operate the Highlander in a manner consistent with counter surveillance such as random U-turns, speeding up and slowing down and aimless turning.  Due to the evasive operation, S/A Cook initiated his emergency lights and sirens to conduct a motor vehicle stop in the vicinity of Howard Street and Pleasant Street in Lawrence, Massachusetts.  LPD officers were immediately on scene to assist S/A Cook.  The operator, identified as ORTIZ, and the

12

passenger, identified as Pedro RODRIGUEZ, were ordered from the vehicle, detained, and placed into handcuffs for officer safety.  Investigators conducted a pat-frisk of both ORTIZ and RODRIGUEZ. ORTIZ was found to have a knife on his pants pocket.  No firearms were located.

26.     Both ORTIZ and RODRIGUEZ were removed from handcuffs and advised they were not under arrest.  S/A Cook attempted to interview with ORTIZ, who stated he lived at the ORTIZ residence and that the Highlander belonged to him.  ORTIZ and RODRIGUEZ both declined at answer further questions.

27.     I learned from S/A Cook that ORTIZ was wearing a black hooded sweatshirt, gray sweatpants, black socks, and black shoes at the time of the motor vehicle stop.

28.     I learned from ATF S/A Kristi McPartlin, who was present on scene to back up S/A Cook, that the Highlander had a broken front passenger window and was missing the front passenger side mirror.  S/A McPartlin stated that in plain view, visible through the missing front passenger window, she observed black sandals with a white Nike logo in the center console compartment along the floorboard, under the Highlander's gear shifter.

29.     The Nike sandals observed in the Highlander are similar to those worn by Suspect #3 during the Second Amendment Outdoors burglary as seen in the surveillance video. The gray sweatpants and black socks worn by ORTIZ were also similar to those that appear to be worn by Suspect #3.

30.     The Highlander was seized and towed by Sheehan's Towing to their secured facility at 10 Carver Street, Lawrence, Massachusetts.  S/A McPartlin followed the vehicle and ensured the Highlander was not accessed by anyone and was in the same state as when it was seized.

13

31.     On December 11, 2021, ATF S/A Patrick Dawley applied for and obtained a

federal search warrant (Docket # 21-6747-MPK) to search the Highlander.  The warrant

authorized the search of Highlander for evidence related to the FFL burglary at Second

Amendment Outdoors, and authorized agents to seize, among other things, records and tangible

objects pertaining to the travel or whereabouts of the vehicle, including location data information

stored on any GPS or other location tracking device installed, and evidence related to occupancy

or use of the vehicle.  Agents executed the warrant later that day.  The following is a list of some

of the items seized from the Highlander: (1) two cellphones, one found in the driver's seat and

one found in the trunk; (2) a ripped white tag, which read "9mm" "3 mags" "$350" and white

string, consistent with the white tags and string attached to all firearms at Second Amendment

Outdoors; (3) a black "Champion" hooded sweatshirt, gray sweatpants and black Nike sandals,

similar to those that appear to be worn by Suspect #3 during the FFL burglary; (4) a black

balaclava, similar to the face coverings observed in surveillance video on Suspect #1 and Suspect

#2 during the FFL burglary; (5) two pairs of black rubber and/or latex gloves, double lined with a

pair of white gloves on the inside; (6) assorted hand tools, to include a pair of yellow pliers,

similar to what appeared to be in the possession of Suspect #2 during the FFL burglary; (7) two

safety chamber indicators for Taurus pistols; (8) a black Polymer80, model PF940V2, 9x19mm

pistol (not stolen from the FFL burglary) with no visible serial number, loaded with a 10-round

magazine containing four rounds of 9x19mm ammunition; and (9) shards of glass in the trunk

cargo area.

32.     Pursuant to the Search Warrant, all of the data was extracted from one of the

cellphones.  The phone appears to have been used by ORTIZ because ORTIZ had told S/A Cook

that his cellphone was in the Highlander. The cellphone that was extracted was located in the

14

driver's seat of the Highlander when the Highlander was stopped by S/A Cook.  ORTIZ was the

operator of the Highlander when it was stopped by S/A Cook.  The data extraction confirmed the

device belonged to ORTIZ.  The data (photos, texts messages, contact information) confirmed

the device was used by ORTIZ.  The data is still being examined but as of this date, ATF has

reviewed a text conversation between "delishellz1274@icloud.com" and OTRIZ on the night of

December 7, 2021, and the early morning of December 8, 2021.  ATF believes the user

associated with user names "delishellz1274@icloud.com" or "delishellz1274" to be Derek

MERCADO because I have learned from conversations with LPD Gang Unit members that

Derek MERCADO uses different versions of deli, delis, and delishellz1274 as a street and social

media screen name.  During the text conversation MERCADO tells ORTIZ to "bring a duffel,"

and to "bring gloves," and again "Don't forget gloves."  These conversation text messages took

place the night and early morning hours prior to the Second Amendment FFL Burglary on

December 8, 2021.

33.     I have learned through conversation with LPD Gang Unit members that

MERCADO is a known GD associate.  LPD Gang Unit is familiar with MERCADO due to

numerous interactions in previous investigations for Breaking & Entering in the Nighttime and

Felony Trespassing in the last ten months. I also learned that MERCADO lives with his mother

at ▮ Union Street, Unit 502, Lawrence, MA.

34.     In reviewing Massachusetts State Police reports and conversations with Trooper

Christopher Amate, I learned that on December 29, 2021, MERCADO was the rear seat

passenger in a 2006 Lexus GS3000 bearing MA registration 2MAT26, which was stopped by the

Massachusetts State Police/Metro Boston Gang Task Force for an equipment violation (right

side/passenger side headlight out) in the City of Boston, Massachusetts. During the traffic stop,

law enforcement observed an open bottle of alcohol at MERCADO's foot.  Law enforcement determined that all three occupants of the vehicle, including MERCADO, were under the age of 21.

35.     Based upon my review of the reports and conversations with Trooper Christopher Amate, I learned that during the traffic stop, law enforcement asked all three occupants to exit the vehicle. The occupants had become uncooperative by not answering questions.  When MERCADO exited the vehicle, he was looking down at his waist band and stepped with a stiff leg.  Law Enforcement believed that MERCADO had a weapon on his person.  A pat frisk of MERCADO's waist band relieved a Taurus, model G3C, Caliber 9mm pistol bearing serial # ABH843415.

36.     The firearm was checked through the Massachusetts Criminal Justice Information System (CJIS), which is the main information system used by Massachusetts law enforcement to query for driver license status, wanted person and stolen property etc.  The firearm had been entered into CJIS as stolen from Second Amendment Outdoors during the burglary that occurred on December 8, 2021.

37.     MERCADO was taken into custody and an iPhone was located on MERCADO's person.  During the booking process, MERCADO gave the cell phone #           4982 as part of his general biographical information.  It is unknown if this number is linked to the iPhone, but I have learned that MERCADO was allowed to use the cell phone prior to being transferred to DYS custody, where he is still being held for a probation violation.

38.     On December 30, 2021, I learned that LPD Gang Unit executed a state search warrant (Docket # 2118SW434) at   Union Street, Apartment 502, Lawrence, Massachusetts, MERCADO's residence, for possession of firearms, magazines, ammunition, etc.  Lawrence

Police applied for the warrant after LPD Gang Unit members, who were monitoring social media, observed a snap from Snapchat account "fundachaser" with a screen name "M B Deli" on December 24, 2021, that depicted a male with tattoos on his right forearm brandishing a black firearm with a laser.  LPD was able to confirm that the male was Derek MERCADO.  The search warrant yielded negative results for the firearm and firearm related items.

39.     On January 10, 2022, a Federal Search Warrant was issued by the U.S. Magistrate Judge Andrea Johnstone, in the District of New Hampshire for the extraction of data contained in the iPhone on MERCADO's person.  On January 14, 2022, the data extraction process was begun.  The device was powered down/ battery ran out of power prior to the iPhone being transferred to ATF from the Massachusetts State Police.  Due to the iPhone being powered down/battery running out of power, the extraction of data is still being completed as it will take an undetermined amount of time to break through the encryption.

40.     Because of undetermined amount of time, it will take to complete the forced break the encryption of the iPhone, I applied for a federal search warrant for the information storage in MERCADO's iCloud account.  On February 11, 2022, Magistrate Judge Johnstone issued a federal search warrant for the iCloud account of Derek MERCADO, which was served to Apple, via email on February 11, 2022.

41.     On February 11, 2022, I learned that LPD were granted a state search warrant (Docket # 2210SW00005) on January 4, 2022, for the Snapchat account username: "fundachaser," which is used/owned by Derek MERCADO.  On February 9, 2022, LPD began reviewing the content received for the account "fundachaser".  Detective Ovalles forwarded one snap obtained from the state warrant to ATF, which showed Derek MERCARDO, Gary ORTIZ, Jaythean DIAZ and at least one unknown male. The snap also displayed eleven (11) firearms that

were displayed on a kitchen counter.

42.     Jaythean DIAZ was identified by Detective Ovalles as a GD associate and a friend of Derek MERCADO. Law Enforcement learned that a phone number, ████-8767, which appeared in Gary ORTIZ cell phone extraction, has a subscriber information of Jomary DIAZ, ████████, Lawrence, Massachusetts. I have learned from Lawrence Police that Jomary DIAZ is Jaythean DIAZ's mother. The phone number ████-7478 also appears in a text message conversation as "Jay."

43.     ATF Special Agent John Forte reviewed the snap and advised me that he believes the firearms are in fact the stolen firearms from Second Amendment Outdoors. S/A Forte advised the firearms shown in the snap match both the general description of a stock model of the firearms and the description of the firearms given by Second Amendment Outdoors owner, Mike Bracci.

## **CONCLUSION**

44.     Based on the foregoing I request that the Court issue the proposed search warrant.

45.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b) (1) (A) & (c) (1) (A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3) (A) (i).  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,


  /s/ James Martin
James A Martin
Special Agent, ATF


Subscribed and sworn to before me
on February 18, 2022:

HONORABLE ANDREA K. JOHNSTONE
UNITED STATES MAGISTRATE JUDGE

## <u>ATTACHMENT A</u>

### Property to Be Searched

This warrant applies to information associated with the snapchat username(s):

1) **fundachaser** listed at [www.snapchat.com](www.snapchat.com) that is stored at premises owned, maintained,

   controlled, or operated by Snapchat, a company headquartered in Venice, California.

   .

# **ATTACHMENT B**

## **Particular Things to be Seized**

**I.      Information to be disclosed by Snapchat**

To the extent that the information described in Attachment A is within the possession, custody,

or control of Snapchat, including any messages, records, files, logs, or information that have

been deleted but are still available to Snapchat, or have been preserved pursuant to a request

made under 18 U.S.C. § 2703(f), Snapchat is required to disclose the following information to

the government for each user ID listed in Attachment A:

    (a)          All stored communications and other files in your possession (to include, if available, account access information, event histories including dates and times, connection dates, times and locations, connection IP information, message content, graphics files, attachments, etc., further detailed below), whether physical, stored on electronic media, or temporarily extant on any computer or server, reflecting communications to or from **Snapchat Accounts: fundachaser;**

    (b)          All files that have been created and/or accessed via **Snapchat Accounts: fundachaser** or that are controlled by user accounts associated with **Snapchat Accounts: fundachaser;**

    (c)          The identifiers and all available information for any other email account(s) associated with **Snapchat Accounts: fundachaser;**

    (d)          All connection logs and records of user message activity, including;

        1)    Transmitter/Sender identifier (i.e. addresses and/or IP address);

        2)    Connection date and time;

        3)    Method of connection (telnet, ftp, http);

4) Data transfer volume;

5) Username associated with the connection and other connection information, including the Internet Protocol address of the source of the connection;

6) Account subscriber identification records;

7) Other user accounts associated with, referenced in or accessed by **Snapchat Accounts: fundachaser;**

8) Address books, contact lists and "**my friends**" if available;

9) Records of files or system attributes accessed, modified, or added by the user.

(e)     All records and other evidence relating to the subscriber(s), customer(s), account holder(s), or other entity(ies) associated with **Snapchat Accounts: fundachaser**, including, without limitation, subscriber names, user names, screen names or other identities, addresses, residential addresses, business addresses, and other contact information, telephone numbers or other subscriber number or identifier number, billing records, information about the length of service and the types of services the subscriber or customer utilized, and any other identifying information, whether such records or other evidence are in electronic or other form.  Such records and other evidence include, without limitation, correspondence and other records of contact by any person or entity about the above-referenced account, the content associated with or relating to postings, communications and any other activities to or through **Snapchat Accounts: fundachaser**, whether such records or other evidence are in electronic or other form.

(f)     All records pertaining to communications between Snapchat and any person regarding the user or the user's Snapchat account, including contacts with support services and records of actions taken.

2

**II.      Information to be seized by the government**

1.      All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code (USC), Sections 371 and 922(u), involving **fundachaser;** for each user ID identified on Attachment A, information pertaining to the following matters:

- 18 U.S.C. § 922(u), theft from a Federal Firearms Licensee;

- the identities of users who engaged in firearms transactions with **fundachaser;** or any person operating the subject Snapchat profile;

- the identity of the person who created the Snapchat accounts **fundachaser;**

- images or videos of firearms;

- direct messages relating to firearms;

- geolocation information related to posts related to the acquisition or selling of firearms;

- geolocation information related to images and videos of firearms; and

- all names or aliases used for the following Snapchat profiles: **fundachaser**.